**AETNA CASUALTY & SURETY COMPANY**

v.

**Johan WESTERKAMP.**

**No. 90–476–M.P.**

Supreme Court of Rhode Island.

Feb. 6, 1992.

Michael Sarli, Michael DeLuca, Gidley, Lovegreen & Sarli, Providence, for plaintiff.

Paul Baillargeon, North Smithfield, for defendant.

## OPINION

KELLEHER, Justice.

This dispute comes to us by way of a petition for certiorari by the plaintiff, Aetna Casualty & Surety Company (Aetna), to review a trial justice's denial of Aetna's motion to stay arbitration proceedings regarding an underinsured-motorist claim. Aetna moved to stay the arbitration proceedings so that it could seek a declaratory judgment that would determine the obligations and liabilities regarding the underinsured-motorist claim. This court granted Aetna's petition for certiorari and Aetna's motion to stay the arbitration proceedings until the issues raised herein can be resolved. The facts of the case are uncontested.

On February 9, 1987, defendant, Johan Westerkamp (Westerkamp), was involved in an automobile collision with one Marianne Culver (Culver) of Massachusetts. Culver was insured up to a limit of $20,000 under a policy issued to her by the Hanover Insurance Company (Hanover). Westerkamp was also covered under his own policy issued by Aetna. Westerkamp sustained bodily injuries in the collision and retained counsel, who entered into settlement negotiations with Culver's insurance carrier, Hanover. On November 10, 1988, Westerkamp, through counsel, advised Aetna of an offer to settle the underlying tortfeasor claim against Culver for the $20,000 maximum allowed under the Hanover policy. Westerkamp also put Aetna on notice of his underinsured-motorist claim against Aetna.[1] A copy of the proposed settlement was sent to Aetna, and on November 21, 1988, another letter requesting authorization to settle the claim against Culver was sent to Aetna.

In January 1989 Westerkamp, thus far having failed to secure Aetna's consent to settle the claim against Culver, forwarded another communication to Aetna explaining why Hanover was offering its policy limits and requesting that Aetna not place the offer of Hanover at risk. Shortly thereafter an Aetna representative contacted Westerkamp's counsel and expressly consented to the settlement with Hanover. At this time Aetna had in its possession a copy of the general release (the release) running from Westerkamp to Culver and Hanover. Aetna did not object to the terms of this release. Aetna also had conducted an "assets check" of Culver, presumably the purpose of which was to explore the feasibility of pursuing any right of subrogation it may have against Culver.

In February 1989 Westerkamp made a demand to arbitrate the underinsured-motorist portion of his claim pursuant to the Aetna policy.[2] Arbitrators were chosen, the parties engaged in discovery, and the arbitration hearing convened on August 22, 1990. The hearing encompassed six hours during which the direct and cross-examination of Westerkamp was completed in addition to the introduction of twenty-four exhibits by Westerkamp. The hearing was continued to October 23, 1990, at the request of Aetna, which needed time to ob-

---

1. The "uninsured motorists coverage" provision of the Aetna policy reads in pertinent part: "We will pay damages which a **covered person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of bodily injury sustained by a covered person and caused by an accident. The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the **uninsured motor vehicle.**" The definition of an underinsured motorist can be found in G.L.1956 (1979 Reenactment) § 27–7–2.1(B), as amended by P.L.1986, ch. 334, § 1:

    "(B) For the purposes of this section 'uninsured motorist' shall include an underinsured motorist. An underinsured motorist is the owner or operator of a motor vehicle who carries automobile liability insurance with coverage in an amount less than the limits that persons insured pursuant to this section are legally entitled to recover because of bodily injury, sickness or disease, including death resulting therefrom."

2. The arbitration clause of the Aetna policy reads in pertinent part, "If we and a **covered person** disagree whether that person is legally entitled to recover damages from the owner or operator of an **uninsured motor vehicle** or do not agree as to the amount of damages, either party may make a written demand for arbitration."

tain Westerkamp's medical records. However, the hearing was never reconvened because Aetna filed the instant petition for declaratory judgment and also filed a motion to stay the arbitration hearing pending a determination on the petition for declaratory judgment. In September 1990 the trial justice denied Aetna's motion to stay the arbitration. This court subsequently stayed the arbitration proceedings and granted Aetna's petition for a writ of certiorari to review the trial justice's denial of Aetna's motion to stay.

Under Rhode Island law, in order to be entitled to a preliminary injunction staying the arbitration hearing, Aetna must show that it will suffer irreparable injury for which there is no legal remedy and a likelihood of success on the merits. *Paramount Office Supply Co. v. D.A. MacIsaac, Inc.*, 524 A.2d 1099, 1102 (R.I.1987); *Brown v. Amaral*, 460 A.2d 7, 10 (R.I. 1983); *Rhode Island Turnpike and Bridge Authority v. Cohen*, 433 A.2d 179, 182–83 (R.I.1981). In the instant case Aetna must show a likelihood of success in the underlying declaratory-judgment action. In other words Aetna must show a likelihood that Westerkamp is not entitled to underinsured-motorists benefits under the Aetna policy.

In arguing that Westerkamp is not legally entitled to underinsured-motorists benefits, Aetna relies on this court's holding in *Gosselin v. Automobile Club Insurance Co.*, 574 A.2d 1243 (R.I.1990). In that litigation this court held that the Gosselins were barred from pursuing an underinsured-motorist claim against their carrier because they had liquidated their claim against the at-fault motorist. In interpreting § 27-7-2.1(B), the court reasoned that once the Gosselins settled their claim with the tortfeasor, they were no longer "legally entitled to recover from the tortfeasor," and thus the tortfeasor lost her status as an underinsured motorist. The court went further to hold that if the Gosselins were no longer legally entitled to recover from the tortfeasor because of their settlement, *then* they were also precluded from collecting under their own underinsured-motorists

policy. 574 A.2d at 1245–46. The holding in *Gosselin* was reaffirmed by this court in *LeFranc v. Amica Mutual Insurance Co.*, 594 A.2d 382, 384 (R.I.1991).

The case before us is significantly distinguishable from *Gosselin* and *LeFranc*. In *Gosselin* the court refrained from addressing the issue of consent, stating that "the record is unclear whether Auto Club ever consented in writing to Mr. and Mrs. Gosselin's settlement with Elliot." *Gosselin*, 574 A.2d at 1245–46. This court has long recognized that the legitimate purpose behind enforcement of consent clauses and notice provisions in an uninsured/underinsured motorists policy is to afford the insurer an opportunity to protect any subrogation rights it may have against the tortfeasor. *Pennsylvania General Insurance Co. v. Becton*, 475 A.2d 1032, 1036 (R.I.1984); *Stanko v. Hartford Accident & Indemnity Co.*, 121 R.I. 331, 334, 397 A.2d 1325, 1326 (1979); *Pickering v. American Employers Insurance Co.*, 109 R.I. 143, 155, 282 A.2d 584, 591 (1971). In the instant case the record regarding whether Westerkamp received Aetna's consent to settle the claim with Culver is clear. The Aetna policy stated that it would not pay benefits to any person "if that person or the legal representative settles the bodily injury claim without our consent." The record indicates that Westerkamp's counsel was quite diligent in securing Aetna's consent to settle with Culver. The record also shows that Aetna exercised prudence in withholding its consent until it had an opportunity to investigate the settlement.

An insurance policy is a contract between the insured and the insurer. *See Murray v. Remuck*, 108 R.I. 179, 273 A.2d 491 (1971). Here, Westerkamp fully complied with the terms of the Aetna policy by securing consent to settle with Culver. The record shows that Aetna had ample opportunity to protect its subrogation rights against Culver and in fact did so by examining the release and conducting an assets check of Culver. In no way was Aetna prejudiced by the actions of Westerkamp in settling with Culver. Furthermore, with regard to the issue of consent,

we believe our holding here would be in harmony with § 27–7–2.1(B)(2), as amended by P.L.1990, ch. 340, § 2, which now reads in pertinent part: "Release of the tortfeasor with the consent of the company providing the underinsured coverage shall not extinguish or bar the claim of the insured against the underinsurance carrier regardless of whether the claim has been liquidated." [3]

In short we find the issue of consent here to be controlling and find Aetna's reliance on *Gosselin* misplaced. Accordingly Westerkamp remains covered under the underinsured-motorists provisions of the Aetna policy despite his settlement with Culver.

For the reasons stated above, Aetna's petition for certiorari is denied, the writ previously issued is quashed, the stay issued by this court is dissolved and the decision of the trial justice denying Aetna's motion for a stay is affirmed. The record in the case is ordered returned to the Superior Court with our decision endorsed thereon.

**3.** We point out that section 2 of P.L.1990, ch. 340, provides that the amendment to § 27–2–2.1 by the act is effective July 12, 1990, and is applicable retroactively to May 25, 1990, which is the day *Gosselin* was decided.