PENNSYLVANIA GENERAL INSURANCE CO.

v.

Rose Mary CANTLEY.

No. 92–11–Appeal.

Supreme Court of Rhode Island.

Nov. 4, 1992.

Jessica Papazian, John A. Baglini, Higgins & Slattery, Providence, for plaintiff.

Kerin M. Woods, Humbert Polito, Jr., Faulkner & Boyce, P.C., New London, for defendant.

## OPINION

PER CURIAM.

This matter came before the Supreme Court on October 2, 1992, pursuant to an order directing both parties to appear and show cause why the issues raised on appeal should not be summarily decided. The defendant, Rose Mary Cantley, appeals from an order of the trial justice granting the motion for summary judgment of the plaintiff, Pennsylvania General Insurance Co. (Penn General).

The undisputed facts in this case are as follows. The defendant was a passenger in a car that collided with a car driven by John Donahue. The defendant suffered personal injury as a result of the accident and pursued a claim against Donahue's insurance company. Donahue carried liability insurance with a policy limit of $100,000. The defendant holds underinsured-liability insurance from two carriers. Penn General-

al provides defendant with underinsurance coverage with a policy limit of $100,000. Allstate Insurance Company (Allstate) provides underinsurance coverage to defendant with a policy limit of $50,000. With the written consent of Penn General, defendant settled with Donahue for $75,000. The remaining $25,000 of coverage on Donahue's policy went to the driver of the car in which defendant was a passenger.

After the settlement with Donahue, defendant demanded underinsurance benefits from Penn General and Allstate. Penn General then filed a declaratory-judgment action to determine (1) whether defendant's settlement with Donahue liquidated her damages and precluded her from seeking underinsurance benefits from Penn General, (2) whether Donahue's automobile was underinsured according to the statutory definition and the definition found in the Penn General policy, and (3) if Donahue's vehicle was underinsured, whether Penn General is entitled to set-off the $75,000 payment that defendant received from Donahue. Both parties moved for summary judgment on these issues. After oral argument the trial justice granted Penn General's motion for summary judgment and denied defendant's motion for summary judgment.

When reviewing the trial court's decision to grant summary judgment, the Supreme Court applies the same standard as the trial court. *Banks v. Bowen's Landing Corp.*, 522 A.2d 1222, 1224 (R.I. 1987). Like the trial court, we review the pleadings, the affidavits, the admissions, the answers to interrogatories, and other items in the light most favorable to the opposing party. If this review reveals no issues of material fact, we then decide whether the moving party is entitled to judgment as a matter of law. *Id.* Applying this standard to this case, we believe that the trial justice erred in granting Penn General's motion for summary judgment and should have granted summary judgment in favor of defendant.

I

The first issue we consider is whether defendant's settlement with Donahue

precludes her from bringing a claim against Penn General for underinsurance benefits. This court has held that when a claimant receives consent to settle a claim from the underinsurance carrier, that claimant is still free to demand underinsurance benefits. *Aetna Casualty & Surety Co. v. Westerkamp*, 603 A.2d 308, 311 (R.I. 1992). *Westerkamp* controls this case. The defendant obtained written consent from Penn General to settle with the tortfeasor. Moreover, the settlement agreement with Donahue expressly reserved the right of defendant to bring underinsured motorist claims. Because defendant preserved her rights against Penn General by obtaining written consent to settle, defendant is entitled to pursue her claims.

## II

We now turn to the question of whether Donahue's vehicle was underinsured. General Laws 1956 (1979 Reenactment) § 27–7–2.1(B), as amended by P.L. 1986, ch. 334, § 1, in effect on the date of the accident, states:

"An underinsured motorist is the owner or operator of a motor vehicle who carries liability automobile insurance with coverage in an amount less than the limits that persons insured pursuant to this section are legally entitled to recover because of bodily injury * * *."

This statute sets forth a two-step process for defining the underinsured motorist. First, we must determine how much the claimant is legally entitled to recover from the tortfeasor. Here defendant was legally entitled to recover $100,000, the liability limit on Donahue's insurance policy.

Second, we must determine if this $100,000 amount recoverable from the tortfeasor is less than the claimant's underinsured-policy limits. Penn General argues that its underinsured-policy limit is $100,000, that Donahue's liability limit is $100,000, and accordingly, that Donahue is not an underinsured motorist. The defendant contends that § 27–7–2.1(B) allows her to "stack" the $100,000 Penn General policy with the $50,000 Allstate policy. The defendant maintains that since Donahue's

$100,000 policy limit is less than her total underinsurance coverage of $150,000, Donahue is underinsured pursuant to the terms of the statute. The precise question, therefore, is whether § 27–7–2.1(B) allows a claimant to stack underinsurance policies from two separate carriers (interpolicy stacking) for the purposes of determining if a tortfeasor is underinsured.

Section 27–7–2.1(B) does not expressly answer this question. Nevertheless, we believe that the structure and purpose of the underinsured-motorist statute requires interpolicy stacking. Section 27–7–2.1(B) attempts to make whole motorists who suffer injury and fail to receive full compensation because of a driver's limited insurance coverage. *See Employers' Fire Insurance Co. v. Baker*, 119 R.I. 734, 740, 383 A.2d 1005, 1008 (1978). Yet not every motorist qualifies under the statute. Section 27–7–2.1(B) only protects motorists who hold underinsurance coverage in an amount greater than the liability limit of the tortfeasor.

It is beyond dispute that if defendant had held all her $150,000 of underinsured-motorist coverage under one policy, she would qualify for underinsurance benefits. Penn General, however, would argue that since defendant held coverage from two carriers and with two policies, she falls outside the protection of the statute. This result is anomalous. The defendant exhibited the financial responsibility that § 27–7–2.1(B) seeks to reward by holding underinsurance coverage in an amount greater than the tortfeasor. We believe that it is irrelevant that defendant held her underinsurance coverage from two separate carriers and conclude that § 27–7–2.1(B) allows interpolicy stacking.

This holding is also consistent with our decisions allowing both interpolicy and intrapolicy stacking (two policies with the same insurance carrier) for compensatory purposes. *Taft v. Cerwonka*, 433 A.2d 215, 218 (R.I.1981); *Employers' Fire Ins. Co. v. Baker*, 119 R.I. at 743, 383 A.2d at 1009. Together these cases hold that irrespective of whether a claimant splits her underinsurance coverage between two carriers or between two policies, that claimant may

collect benefits under both policies. *Taft*, 433 A.2d at 218.

These cases protect two important interests of the insured. First, they protect a contractual interest. In *Taft* we supported our holding by noting that when a claimant pays premiums for two separate policies, that claimant is entitled to recover benefits under both policies. *Id.* at 217–18. Second, these cases protect an expectation interest. When insureds pay out two sets of premiums, he or she does so with the belief that both policies will compensate him or her in the event of an accident. *Id.* at 218 (citing *Allstate Insurance Co. v. Maglish*, 94 Nev. 699, 703, 586 P.2d 313, 315 (1978)).

To adopt Penn General's position and bar interpolicy stacking when defining underinsured motorist would weaken these precedents. We would effectively preclude an individual who held the required insurance coverage from ever receiving full compensation. This result is completely at odds with the purpose of the underinsured motorist statute and our prior precedents.

Penn General relies on our decision in *Pennsylvania General Insurance Co. v. Morris*, 599 A.2d 1042, 1044 (R.I.1991), in arguing that § 27–7–2.1(B) does not require interpolicy stacking. This reliance is misplaced. In *Morris* the tortfeasor held liability insurance in the amount of $1.3 million. The claimant held an underinsurance policy of $500,000 and an umbrella policy of $1 million. This court refused to allow the claimant to stack the two policies because the umbrella policy did not provide underinsurance coverage. *Id.* In effect the claimant in *Morris* tried to stack an underinsurance policy with a policy that only provided coverage for torts committed by the claimant. *Id.* This is very different from the present case. Here defendant seeks to stack two policies that clearly provide underinsurance benefits. Section 27–7–2.1(B) allows this form of policy stacking.

Penn General also relies on the language in its insurance policy to support its position. Indeed, Penn General's policy defined underinsured motorist with language slightly different from the language in § 27–7–2.1(B). The policy defines an un-derinsured motorist as one whose "limits for bodily injury liability [are] less than the limit of liability for this coverage." Penn General argues that its use of the singular word "limit" and its confining phrase "for this coverage" prevent the claimant from engaging in interpolicy stacking.

We agree that the Penn General policy attempts to alter the statutory definition of underinsured motorist. We believe, however, that the statutory definition controls. In *Allstate Insurance Co. v. Fusco*, 101 R.I. 350, 356, 223 A.2d 447, 450 (1966), this court stated:

"It is well settled that where the law-making power speaks on a particular subject over which it has constitutional power to legislate, public policy in such a case is what the [legislature] enacts. * * * Thus contracts of insurance carriers must conform to constitutionally valid conditions imposed by the legislature."

In *Fusco* we amended a definition of uninsured motorist that departed from the statutory definition. *Id.* Following *Fusco*, we hold that to the extent the Penn General policy conflicts with the statutory definition, the statutory definition controls.

### III

■ The final issue is whether Penn General is entitled to set-off the $75,000 that defendant received from Donahue's insurance carrier. The Penn General policy states:

"Any amounts otherwise payable for damages under this coverage shall be reduced by all sums: (1) Paid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible."

In *Poulos v. Aetna Casualty & Surety Co.*, 119 R.I. 409, 411, 414, 379 A.2d 362, 363, 365 (1977), this court interpreted a similar set-off clause as requiring that payments received be deducted from total damages, not from the liability limit on the policy. In this case Penn General may use the set-off clause to prevent the defendant from receiving a double recovery in the event that her total damages do not exceed the Penn General policy limits. Our review

of the record does not indicate the amount of the defendant's total damages. We therefore remand the case to the trial court for a determination of damages.

Accordingly the defendant's appeal is sustained, the judgment appealed from is reversed, and the case is remanded to the Superior Court for further proceedings, with directions to enter judgment consistent with this opinion.