# United States Court of Appeals
## For the First Circuit

No. 24-1040

CYNTHIA A. ROBERGE,

Plaintiff, Appellant,

v.

TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. John J. McConnell, Jr., U.S. District Judge]

Before

Barron, Chief Judge,
Thompson and Gelpí, Circuit Judges.

James S. D'Ambra, with whom Wayne G. Resmini and Resmini Law LLC were on brief, for appellant.
Jessica M. Savino, with whom John P. Graceffa and Morrison Mahoney LLP were on brief, for appellee.

August 12, 2024

THOMPSON, **Circuit Judge**. Insurance law is notoriously complex and today's appeal proves that point. To explain, before us we have Appellant Cynthia Roberge ("Roberge") and Appellee Travelers Property Casualty Company of America ("Travelers"). Regrettably, Roberge was in a serious car accident with an underinsured motorist[1] during the course of her then-employment for the State of Rhode Island ("the State"). Following the accident, Roberge made a demand for uninsured/underinsured motorist ("UM/UIM") coverage under an insurance policy ("the Policy") issued by Travelers to the State, but Travelers ultimately concluded she was not entitled to UM/UIM coverage under the Policy. Believing that Rhode Island insurance law required that she be afforded UM/UIM coverage under the Policy, Roberge sued. The district court, however, disagreed and granted Travelers summary judgment.

Now on appeal to us, both parties read Rhode Island insurance law very differently and argue it undeniably requires their preferred outcome. For our part, we don't view the issues or the law nearly as cut-and-dry as the parties do. In fact, as we see it, today's appeal would require us to answer complex questions of Rhode Island insurance law regarding UM/UIM coverage

---

[1] For those insurance-law newbies, a motorist is "underinsured" when the limits of their liability coverage are insufficient to cover the victim's injuries. See Ladouceur v. Hanover Ins. Co., 682 A.2d 467, 468 n.3 (R.I. 1996).

- 2 -

-- questions upon which the Rhode Island Supreme Court has not had a chance to opine. Accordingly, because the Rhode Island Supreme Court has the final word on matters of Rhode Island law, Johnson v. Johnson, 952 F.3d 376, 377 (1st Cir. 2020), we certify the two unresolved questions identified below to that Court for insight.

**FACTS AND TRAVEL**

In comparison to the unsettled legal landscape we referenced above and will describe in depth below, the material facts are straightforward and not in dispute.

*The Policy and UM/UIM Coverage*

Travelers first issued the Policy to the State in January 2004, with the named insured[2] being the "State of Rhode Island." The Policy was continuously renewed over the years, including, most pertinently to our purposes, for the period of February 1, 2018 to February 1, 2019.

Under the Policy, UM/UIM coverage is available only if the claimant is considered an "[i]nsured." The only relevant Policy definition of "[i]nsured" for purposes of UM/UIM coverage is "[a]nyone 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto'. Any 'auto' that is owned by the [State] is not a temporary substitute for a covered 'auto'. The covered

_____

[2] In insurance lingo, named insureds are also "commonly referred to as class-I insureds, and occupants of an insured vehicle[ are] commonly referred to as class-II insureds." Finch v. Centennial Ins. Co., 650 A.2d 495, 497 (R.I. 1994).

'auto' must be out of service because of its breakdown, repair, servicing, 'loss' or destruction." Accordingly, being considered an "[i]nsured" (and thus having access to UM/UIM coverage under the Policy) turns on whether the car at issue is a "covered 'auto' or a temporary substitute for a covered 'auto.'"

As for the definition of "covered 'auto,'" the Policy provides a list of ten symbols from which the State could have selected what constitutes a "covered 'auto.'"  Here, the State selected symbol "2" for UM/UIM coverage.  Symbol "2" means "[o]wned '[a]utos' [o]nly" -- defined in the Policy as "[o]nly those 'autos' you own."[3]  What all this insurance mumbo-jumbo means here is that, under the Policy, there was UM/UIM coverage for accidents involving only cars owned by the State or temporary substitutes for cars owned by the State.  And, notably, the State specifically selected a $50,000 limit per accident for UM/UIM coverage claims.

*The Car Accident and Denial of Coverage*

On October 18, 2018 (and while the Policy was in effect), Roberge was in a car accident with an underinsured motorist.  At

---

[3] A brief aside for some other helpful contractual context. First, the use of "you" and "your" in the Policy "refer[s] to the Named Insured shown in the Declarations," which (to refresh) refers to the "State of Rhode Island."  Second, to illustrate some of the other options available to the State on that ten-symbol list, symbol "1" would have afforded UM/UIM coverage to "[a]ny '[a]uto,'" and symbol "9" would have afforded such coverage to "[n]on-owned '[a]utos' [o]nly," which "includes 'autos' owned by your 'employees' . . . while used in your business."  The State did not select either symbol for UM/UIM coverage.

the time of the accident, she was acting within the course of her employment for the State[4] and she was driving her own personal car. According to Roberge, it was common for employees to use their own personal cars if all of the State's cars were in use by other employees and, therefore, no State car was available -- as was the case on the date of the accident.[5] As a result of the accident, Roberge sustained injuries and has been unable to return to work.

After the accident, Roberge made a claim against Travelers for UM/UIM coverage under the Policy issued to the State.[6] Travelers denied Roberge UM/UIM coverage on September 19, 2019, and ultimately reaffirmed its denial on December 20, 2019 and October 2, 2020. In its denials, Travelers explained that Roberge was not owed UM/UIM coverage under the Policy because she was driving her own car at the time of the accident and, therefore,

---

[4] Nowhere in its briefing before this Court or before the district court did Travelers attempt to refute that, at the time of the accident, Roberge was acting within the scope of her employment. Indeed, all the evidence in the record supports that conclusion.

[5] In light of Roberge's concession that she used her own car on the day of the accident because "all of [the State's] vehicles were already in use by other [State employees]," her own car cannot be considered a "temporary substitute for a covered 'auto'" as the State's cars were not "out of service because of [their] breakdown, repair, servicing, 'loss' or destruction."

[6] At the time of the accident, Roberge also had her own personal insurance policy with USAA.

- 5 -

was not driving a "covered 'auto'" and was not considered an "[i]nsured."

*The Instant Lawsuit and District Court's Decision*

None too pleased with those denials, Roberge filed the instant complaint against Travelers on April 4, 2021 in Providence County Superior Court. The complaint raised five counts: breach of contract ("Count I"); declaratory judgment that she was a named insured under the Policy ("Count II"); declaratory judgment that the Policy offered her coverage up to $1,000,000 ("Count III"); declaratory judgment that Travelers' acts were malicious in its denial of coverage and entitled her to punitive damages ("Count IV"); and bad faith ("Count V"). A month later, Travelers removed the case to federal court premised on diversity. Eventually in 2023, Travelers filed a motion for summary judgment as to all counts, arguing that Roberge was not entitled to UM/UIM coverage under the Policy or under Rhode Island insurance law. Not to be outdone, Roberge filed a cross-motion for summary judgment as to only Counts I-III. In her cross-motion, Roberge argued that (among other things) she was entitled to UM/UIM coverage, notwithstanding the Policy's language, pursuant to the Rhode Island Supreme Court's decision in Martinelli v. Travelers Insurance Companies, 687 A.2d 443 (R.I. 1996), or, alternatively, pursuant to the Rhode Island Uninsured Motorist Statute, R.I. Gen. Laws § 27-7-2.1 (more on the relevance of this case and statute later).

On December 15, 2023, the district court issued an order granting Travelers' motion for summary judgment and denying Roberge's cross-motion. In doing so, the district court reasoned that, because she was driving her own car at the time of the accident, she was not driving a "covered 'auto'" and she was not an "[i]nsured." It also explained that neither Martinelli nor the Rhode Island Uninsured Motorist Statute required that Roberge be given UM/UIM coverage.

Roberge then filed a timely appeal, asking us to step in and grant her the UM/UIM coverage she believes she's due under Rhode Island insurance law.

## THE ISSUES

Boiled down to its essence, the only issue before us is whether Roberge is entitled to UM/UIM coverage. While disagreement between the parties on that issue abounds, it's helpful to start at the outset with what everyone can agree upon. Here, the parties (and the district court, to boot) agree that, under the text of the Policy itself, Roberge is not entitled to UM/UIM coverage because she was driving her own car and, therefore, was not driving a "covered 'auto'" and was not an "[i]nsured."[7]

While agreement on that point simplifies things somewhat, it doesn't resolve today's appeal. That is so because

_____

[7] We, too, can get behind that reading of the Policy because, heeding the Rhode Island Supreme Court's instruction, insurance

- 7 -

Roberge argues on appeal (as she also did before the district court) that, despite the terms of the Policy, the Rhode Island Supreme Court's Martinelli decision and/or the Rhode Island Uninsured Motorist Statute require that she be afforded UM/UIM coverage. As we previewed up top, by our lights, both the Martinelli issue and the Rhode Island Uninsured Motorist Statute issue involve unanswered and outcome-determinative questions of Rhode Island insurance law that are better left to our Rhode-Island-law colleagues on the Rhode Island Supreme Court. Consequently, our plan is to certify two questions to that Court.

Certification, however, is only appropriate under the Rhode Island Supreme Court's Rules of Appellate Procedure where the certified question "may be determinative of the cause then pending in the certifying court" and "there is no controlling precedent in the decisions of the [Rhode Island] Supreme Court." R.I. Sup. Ct. R., Art. I, R. 6(a). Our own law also places

---

policies must be read in accordance with "the rules established for the construction of contracts generally" and "[t]he terms of the policy shall be given their plain, ordinary, and usual meanings." Koziol v. Peerless Ins. Co., 41 A.3d 647, 650 (R.I. 2012) (citations omitted). And applying those principles here, it is clear as day that, per the terms of the Policy, Roberge was not an "[i]nsured" for purposes of UM/UIM coverage. The Policy limits who is considered an "[i]nsured" to "[a]nyone 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto,'" and "covered 'auto'" is limited to "'[a]utos' [the State] own[s]." Because Roberge was driving her own car at the time of the accident as all of the other State's cars were in use, she was not driving a "covered 'auto' or a temporary substitute for a covered 'auto'" and is, therefore, not an "[i]nsured."

limitations on when certification of a question of state law is appropriate. "Specifically, because of our own obligations to exercise the jurisdiction that we have," certification is not the right course of action where, despite the absence of controlling precedent, state law is sufficiently clear for us to predict how a state's highest court would decide the question. R.I. Truck Ctr., LLC v. Daimler Trucks N. Am., LLC, 92 F.4th 330, 348 (1st Cir. 2024). In the sections that follow, we explain why those requirements fit this case and the issues like a glove. Before doing so, however, we take a beat to outline the standard of review through which we analyze the issues.

### Standard of Review

We review the grant of summary judgment de novo (i.e., without deference to the district court's views). MacRae v. Mattos, 106 F.4th 122, 132 (1st Cir. 2024). In doing so, "we assess the facts in the light most flattering to the nonmovant and draw all reasonable inferences on its behalf." R.I. Truck Ctr., LLC, 92 F.4th at 346 (citation omitted). This lens and mode of analysis do not change where the parties file cross-motions for summary judgment (as is the case here). Rather, we simply review each motion "separately, drawing facts and inferences in favor of

the non-moving party." Scottsdale Ins. Co. v. United Rentals (N. Am.), Inc., 977 F.3d 69, 72 (1st Cir. 2020).

*The Martinelli Issue*

Our de-novo lenses on and our sleeves rolled up, we get to work, starting off with the Martinelli issue. Basically, Roberge argues that the Rhode Island Supreme Court's decision in that case requires that she be afforded UM/UIM coverage, despite the Policy's clear language excluding her from such coverage. Travelers fires back that Martinelli requires no such thing. Ultimately, we think this kerfuffle is best left to the Rhode Island Supreme Court to resolve. To explain why, we'd better start off with the Martinelli decision itself and some of the decisions that followed it.

In Martinelli, David Martinelli ("Martinelli"), the principal shareholder and general manager of Select Auto Sales, Inc. ("Select Auto"), was injured in a car accident while riding in a car owned by Theresa Tantimonaco and operated by her husband, Mark Tantimonaco.[8] 687 A.2d at 444-45. Martinelli's damages exceeded the liability-coverage limit of the Tantimonaco's insurance policy, so Martinelli filed a claim with Travelers, Select Auto's insurer, for UM/UIM coverage under Select Auto's insurance policy. Id. at 444. Travelers denied the claim and,

---

[8] To be crystal clear, the Tantimonacos' car was not owned by Select Auto nor did it have any affiliation with Select Auto.

- 10 -

after Martinelli filed a lawsuit for declaratory judgment, the trial court granted Travelers' motion for summary judgment. Id. at 444-45.

Before getting to what the Rhode Island Supreme Court actually decided, it's worth walking through some of the provisions of Select Auto's insurance policy (and its many similarities to the Policy Travelers issued to the State). The named insured was Select Auto and every use of the word "you" and "your" in that policy referred to Select Auto itself. For UM/UIM coverage to apply under that policy, the claimant had to be considered an "[i]nsured." An "[i]nsured" was defined in the policy as follows:

> 1. You
> 2. If you are an individual, any family member.
> 3. Anyone else occupying a covered auto or a temporary substitute for a covered auto. The covered auto must be out of service because of its breakdown, repair, servicing, loss or destruction.
> 4. Anyone for damages he or she is entitled to recover because of bodily injury sustained by another insured.

Id. at 445. Like the Policy at issue in today's appeal, the definition of "covered auto" was limited to "[o]nly those autos [Select Auto] own[s]."

On appeal to the Rhode Island Supreme Court, Martinelli argued that the first definition of "[i]nsured" under the policy (i.e., "You") was ambiguous because Select Auto (the entity defined as "You" in the policy) could not suffer bodily injury and

- 11 -

therefore never receive the benefits of the policy.  Id.  For that definition to make sense, according to Martinelli at least, "You" must have also included Martinelli himself because he was Select Auto's principal shareholder and general manager.  Id.

The Rhode Island Supreme Court flatly disagreed, finding the policy's language to indicate unambiguously that "You" referred only to the named insured (i.e., Select Auto).  Id. at 445-46.  "Therefore," according to the Rhode Island Supreme Court and "pursuant to the plain terms of the policy, [Martinelli] was not entitled to uninsured-motorist coverage for injuries sustained while riding in a noninsured vehicle for personal reasons."  Id. at 446.  The Court further noted that Martinelli could not be considered an "[i]nsured" under the anyone-occupying-a-covered-auto definition of "[i]nsured" because "[i]t was undisputed that [Martinelli] was not occupying an insured vehicle" (recall that the policy limited "covered 'auto[s]'" to "[o]nly those autos [Select Auto] own[ed]" and the Tantimonacos owned the car at issue).  Id.

In reaching that conclusion, the Rhode Island Supreme Court "note[d] that the majority of jurisdictions that have addressed this issue have concluded that a corporate shareholder or an employee is not eligible for uninsured-motorist benefits under a policy in which the corporation is the named insured, in the event that his or her injuries were sustained outside an

- 12 -

insured vehicle." Id. The Rhode Island Supreme Court ended its analysis with the following (and it's important so don't forget):

> Although we hold that in the circumstances of this case and pursuant to the policy in question [Martinelli] did not qualify for uninsured-motorist benefits, we do not foreclose the possibility that in different circumstances this Court could conclude that an individual shareholder or employer might be eligible for uninsured-motorist coverage under a policy that listed the corporation as the named insured. For instance, [Martinelli] in the instant case was clearly acting outside the scope of his employment at the time of his accident. It is conceivable that a shareholder or an employee who is injured while acting within the scope of his or her employment might be considered the named insured for purposes of uninsured-motorist coverage. Because [Martinelli] was clearly acting outside the scope of his employment at the time he was injured, we need not make such a determination.

Id.

It is this language in Martinelli that Roberge latches onto for her argument that she is entitled to UM/UIM coverage under the Policy, notwithstanding the Policy's own terms. In her mind, the Martinelli Court created an exception (the so-called Martinelli exception), which requires that employees be considered the named insured if they were acting within the scope of their employment and therefore be entitled to UM/UIM coverage. Because it is undisputed that she was acting within the scope of her employment at the time of the accident, the argument goes, Martinelli requires that she be given UM/UIM coverage.

- 13 -

While the Rhode Island Supreme Court has never actually applied the so-called Martinelli exception and granted relief to a party seeking application of that exception, there is some reason to believe that that Court recognizes such an exception, given some of its subsequent decisions. For example, consider Medeiros v. Anthem Casualty Insurance Group ("Medeiros I"), 796 A.2d 1078 (R.I. 2002) (per curiam).[9] In that case, two men, Edward Couto ("Couto") and Richard Rampino ("Rampino" and, collectively with Couto, "decedents"), were killed in a car accident when they were struck by an uninsured drunk driver. Id. at 1079. The decedents were on their way home from a Red Sox game at Fenway Park in a car owned by Rampino and operated by Couto. Id. At the time of their deaths, each decedent owned 25 percent of two corporations, Damien Corp., d/b/a Porino's Gourmet Foods ("Porino's"), and Tara Food Services, Inc., d/b/a West Valley Inn ("West Valley"). Id. Porino's had an insurance policy issued by Travelers, and West Valley had an insurance policy issued by Anthem Casualty Insurance Group ("Anthem"). Id. These policies covered two specific cars (neither of which was the car involved in the accident) and

---

[9] As the Medeiros litigation resulted in several per curiam and non-published decisions which don't provide a full factual picture of the underlying events giving rise to that litigation, we have consulted portions of the Medeiros record (which the parties included in the record before us) to fill in some of those missing details.

provided UM/UIM coverage to these corporations as the named insureds. Id.

Maria Medeiros ("Medeiros"), executrix of Couto's estate, filed a lawsuit against Anthem, seeking UM/UIM benefits under the policy it issued to West Valley. Id. She argued that the language of the policy was ambiguous as to who actually was the named insured and that there was a material issue of fact as to whether the decedents were acting in the course of their business and employment at the time of the accident. Id. The trial court ultimately sided with Anthem and granted it summary judgment. Id.

On appeal to the Rhode Island Supreme Court, that Court determined that Martinelli controlled because, just like in that case, the policy's named insured was West Valley, which only meant the corporation, not its shareholders. Id. at 1080. However, before ending its opinion, the Rhode Island Supreme Court seemed to say that the so-called Martinelli exception did, indeed, exist:

> We agree with [Medeiros] that in Martinelli, this Court suggested that shareholders and employees acting within the scope of their employment might be considered the named insured for purposes of uninsured motorist coverage. However, there is no evidence tending to show that [Couto] falls within this exception. [Medeiros] presented no direct evidence that the decedents were engaged in any business-related activity. Therefore, the grant of summary judgment was appropriate in this case.

- 15 -

Id.

The Medeiros I case generated further litigation that is also relevant to the existence (or non-existence) of the Martinelli exception. While the Medeiros I appeal was pending, Medeiros filed yet another appeal, seeking to vacate the granting of summary judgment in favor of Anthem based upon newly discovered evidence. This newly discovered evidence seemed to suggest that the decedents were at the Red Sox game to discuss business opportunities for West Valley. Medeiros v. Anthem Cas. Ins. Grp. ("Medeiros II"), 822 A.2d 175, 177 (R.I. 2003) (per curiam). In Medeiros II, the Rhode Island Supreme Court decided that the newly discovered evidence could not come in because Medeiros did not demonstrate due diligence. Id. at 178-79. While the Medeiros II Court did not discuss the details of the Martinelli exception, it stated that, "[i]n Medeiros I, we affirmed the judgment because, absent any evidence that the decedents were acting in the course of their employment on behalf of the corporations when the accident occurred, summary judgment was proper." Id. at 176-77. This language again suggests the existence of the Martinelli exception because, if evidence existed that the decedents were acting within the scope of their business and employment, summary judgment in favor of Anthem would not have been proper (despite the fact that Couto was in a non-covered auto at the time of the accident).

- 16 -

But that's still not where the story ends.  The Medeiros litigation continued on in Providence County Superior Court. There, Medeiros filed yet another lawsuit -- this time against Travelers -- and provided some evidence that the decedents went to the Red Sox game in the course of their employment.  In response, Travelers filed a motion for summary judgment.  In Medeiros v. Aetna Casualty & Surety Company of America ("Medeiros III"), No. C.A. 01-4842, 2003 WL 23195558, at *1 (R.I. Super. Ct. Dec. 8, 2003), then-Superior-Court-Justice Gilbert V. Indeglia[10] started off his decision by noting that, under the policy Travelers issued to Porino's, the named insured was Porino's and an "[i]nsured" for purposes of UM/UIM coverage was defined as follows:

> 1. You
> 2. If you are an individual "family member."
> 3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto."
> . . .
> 4. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another insured.

Citing Martinelli and Medeiros I, Justice Indeglia explained that Couto could not be considered an "[i]nsured" because "You" clearly referred only to Porino's.  Id. at *3.

Notwithstanding this conclusion, Justice Indeglia denied Travelers summary judgment because Medeiros had presented

---

[10] It's worth highlighting here that Justice Indeglia would go on to serve as an Associate Justice of the Rhode Island Supreme Court.

- 17 -

sufficient evidence that the decedents were acting within the scope of their employment at the time of the accident and thus created a genuine issue of material fact as to whether, despite the policy's language, Couto could still be considered the named insured. Id. at *4-5. In reaching that conclusion, Justice Indeglia explained:

> However, the Martinelli Court, left open the possibility of an exception whereby a shareholder may be considered the named insured for UM benefits when the corporation is named. The Court indicated that "[i]t is conceivable that a shareholder or an employee who is injured while acting within the scope of his or her employment might be considered the named insured for purposes of uninsured-motorist coverage." While the Court did not specifically outline the criteria for such a determination, the Court indicated that a legally insufficient situation would be a trip for "personal business," "personal reasons," or a "pleasure trip, with no connection to business." In Martinelli, a determination was not necessary on whether the shareholder was sufficiently engaged in employment-related activities for the purposes of being considered the named insured because the shareholder "*was clearly acting outside the scope of his employment at the time he was injured . . . .*" Likewise, the Medeiros I Court, agreeing that shareholders acting within the scope of their employment might be considered the named insured, affirmed summary judgment because "plaintiff presented *no direct evidence* that the decedents were engaged in any business-related activity." The Supreme Court specifically indicated that it "affirmed the judgment [in Medeiros I] because, *absent any evidence* that the decedents were acting in the course of their employment on behalf of the corporations

- 18 -

> when the accident occurred, summary judgment
> was proper."

Id. at *4 (alterations in original) (citations omitted).  In response to Travelers' argument that the Martinelli exception was mere dicta, Justice Indeglia said, "even if the Martinelli exception constituted dicta, that is no longer the case. Subsequent to Martinelli, the Court [in Medeiros I and Medeiros II] directly affirmed summary judgment because the Martinelli exception was not shown.  Consequently, this Court finds that [Medeiros] may rely on the [Martinelli] exception."  Id. at *5 (citations omitted).

Needless to say, the parties (and the district court) have different takes on the just-described caselaw.  Roberge argues that the Martinelli exception exists, the Rhode Island Supreme Court reaffirmed its existence in Medeiros I and Medeiros II, and the exception clearly applies here because she was acting within the scope of her employment at the time of the accident -- which all means summary judgment should have been granted in her favor. For its part, Travelers argues that Martinelli did not create such an exception, it simply did not "foreclose the possibility that in different circumstances . . . an employee who is injured while acting within the scope of his or her employment might be considered the named insured for purposes of uninsured-motorist coverage."  Martinelli, 687 A.2d at 446.  To Travelers, the Rhode

Island Supreme Court has never identified under which "circumstances" an employee injured while acting with the scope of their employment would be considered the named insured for purposes of UM/UIM coverage. Similarly, the district court determined that the Rhode Island Supreme Court has never identified the precise circumstances under which the Martinelli exception would apply and, even if that Court had, the exception would not apply because the Martinelli Court was considering coverage for an injured party that was a shareholder of the named insured, not a regular employee as is the case for Roberge.

Putting all this together, it is clear to us that this kerfuffle between the parties turns on the precise circumstances under which the Martinelli exception applies (to the extent such an exception even exists). While Martinelli, Medeiros I, and Medeiros II -- the only Rhode Island Supreme Court decisions to have discussed the Martinelli exception -- are helpful in navigating this question, we do not think they sufficiently "allow us to predict [that Court's] course." Hosp. San Antonio, Inc. v. Oquendo-Lorenzo, 47 F.4th 1, 6 (1st Cir. 2022) (citation omitted). To be sure, these cases suggest (as Roberge points out) that, for purposes of UM/UIM coverage, summary judgment in favor of an insurer may not be proper where an employee was injured in the scope of their employment. However, that doesn't necessarily mean summary judgment in her favor is appropriate either.

The Rhode Island Supreme Court has never explained when summary judgment in favor of a named insured's employee is proper because it was never confronted with a case -- like the one at issue here -- where an employee was injured while in the scope of her employment. In this way, then, it is also true (as Travelers points out) that the Rhode Island Supreme Court has never delineated the precise contours and circumstances of this so-called exception.[11] It merely stated that "[i]t [was] conceivable that a shareholder or an employee who is injured while acting within the scope of his or her employment might be considered the named insured for purposes of uninsured-motorist coverage." Martinelli, 687 A.2d at 446. Indeed, even Justice

---

[11] For example, much of the commotion in Martinelli and Medeiros I regarded the definition of "You" -- language noticeably absent from the Policy at issue here. Medeiros I, 796 A.2d at 1080; Martinelli, 687 A.2d at 445-46. But the Rhode Island Supreme Court never explained whether the Martinelli exception would apply only in the context of that specific policy language. Moreover, there's some reason to believe that the absence of this "You" language might not be a difference-maker. As explained above, an "[i]nsured" is defined by reference to whether the claimant was operating a "covered 'auto.'" That definition only applies, though, if the named insured is "[a] partnership, limited liability company, corporation or any other form of organization." If the named insured, however, is instead "[a]n individual," then the Policy defines an "[i]nsured" as (among other things) "[t]he Named Insured" -- which is very similar to the "You" language discussed in Martinelli and the Medeiros line of cases. Accordingly, if Martinelli requires that an employee (like Roberge, for instance) injured in the scope of her employment be considered the named insured of a given policy, Martinelli, 687 A.2d at 446, there's an argument to be made that, as an individual, she would be considered an "[i]nsured" for UM/UIM-coverage purposes regardless of the car she was operating at the time of the accident.

- 21 -

Indeglia noted in Medeiros III that "the Rhode Island Supreme Court ha[d] not fully resolved the [Martinelli] issue" because there could be circumstances under which an employee acting within the scope of their employment would, nevertheless, still not be considered the named insured. Medeiros III, 2003 WL 23195558, at *5 n.7.

Accordingly, with "no controlling precedent" on this issue, which is "determinative of the [pending] cause [of action]," R.I. Sup. Ct. R., Art. I, R. 6(a), we conclude that the more prudent approach is to give the Rhode Island Supreme Court the first opportunity to answer the following question of Rhode Island state law:

> In light of Martinelli v. Travelers Ins. Cos., 687 A.2d 443 (R.I. 1996), and Rhode Island law, must an employee, who is operating her own personal vehicle while in the scope of her employment, be considered a named insured under her employer's auto insurance policy, despite policy language to the contrary?

This approach is particularly warranted here for two reasons. First, federalism concerns and principles of prudence are at their peak when a federal case "raises difficult questions of state law bearing on important matters of state policy," as is the case here. Smith v. Prudential Ins. Co. of Am., 88 F.4th 40, 57 (1st Cir. 2023) (quoting Growe v. Emison, 507 U.S. 25, 32 (1993)). Second, as is also the case here, where "the policy considerations at play do not squarely favor a particular outcome," certification allows

- 22 -

the state's highest court to make that policy judgment itself. Patel v. 7-Eleven, Inc., 81 F.4th 73, 76 (1st Cir. 2023) (per curiam).

*The Rhode Island Uninsured Motorist Statute Issue*

While now on the other side of the Martinelli issue, our work is still not yet done. Remember that Roberge argues that, separate and apart from Martinelli, the Rhode Island Uninsured Motorist Statute, R.I. Gen. Laws § 27-7-2.1, also requires that she be afforded UM/UIM coverage under the Policy. Let's break that argument down.

The Policy does not simply provide UM/UIM coverage; it also provides liability coverage. As was the case with UM/UIM coverage, to be entitled to liability coverage under the Policy, a claimant must be considered an "[i]nsured." Pursuant to a Business Auto Extension Endorsement, however, the definition of "[i]nsured" for purposes of liability coverage extends to "[a]ny 'employee' of yours . . . while using a covered 'auto' you don't own, hire or borrow in your business or your personal affairs." As for the definition of "covered 'auto'" as used here, the State selected symbol "1" for liability coverage, which (remember) means "[a]ny '[a]uto.'" Because Roberge's car falls within this expansive definition of "covered 'auto'" and she was using it in the course of her employment for the State, she is an "[i]nsured" for purposes of liability coverage under the Policy (a conclusion

upon which all parties -- and we -- agree).  And, notably, the State selected a limit of $1,000,000 per accident for liability coverage.

Against that liability-coverage backdrop, we turn now to the Rhode Island Uninsured Motorist Statute, which provides, in relevant part, that:

> No policy insuring against loss resulting from liability imposed by law for . . . bodily injury . . . suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided in or supplemental to the policy . . . for the protection of persons insured under the policy who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of property damage, bodily injury, sickness, or disease, including death, resulting from that injury, sickness, or disease. <u>The insurer shall provide uninsured motorist coverage in an amount equal to the insured's bodily injury liability limits.  The named insured shall have the option of selecting a limit in writing less than the bodily injury liability coverage, but in no event less than the limits set forth in § 31-47-2(13)(i)(A), unless the named insured is purchasing only the minimum coverage required by compulsory insurance provisions of the general laws, in which case the limit can be reduced to zero, but only after signing an advisory notice approved by the director of business regulation concerning the hazard of uninsured and underinsured motorists.</u>

R.I. Gen. Laws § 27-7-2.1(a) (emphases ours).  The statute defines "policy insuring against loss" as "a policy that provides primary

coverage for the insured motor vehicle." Id. § 27-7-2.1(c)(1). Additionally, the statute requires that, once the insured selects the amount of UM/UIM coverage it wants, the insurer is "required to notify the policyholder, in any renewal, reinstatement, substitute, amended, altered, modified, transfer, or replacement policy, as to the availability of that coverage or optional limits." Id. § 27-7-2.1(d).

Putting two and two together, Roberge argues that, because the Policy provided her liability coverage in the amount of $1,000,000 and the Rhode Island Uninsured Motorist Statute requires that insurers provide UM/UIM coverage in an amount equal to the policy's liability coverage limits (unless the insured specifically selects a lesser amount), she is due UM/UIM coverage in the amount of $1,000,000. Taking her logic one step further, she ultimately argues that Travelers denying her UM/UIM altogether and limiting UM/UIM coverage to "[o]wned '[a]utos' [o]nly" violates the public policy underlying the Rhode Island Uninsured Motorist Statute and, therefore, that provision of the Policy must be rendered void.

Naturally, Travelers disagrees. In its view, the public policy of the Rhode Island Uninsured Motorist Statute does not require that insurers provide insureds with UM/UIM coverage that protects them in every factual scenario. Moreover, Roberge -- Travelers says -- has pointed to no Rhode Island Supreme Court

- 25 -

decision holding that it violates public policy to deny UM/UIM coverage in circumstances such as those at issue here.

That last part is true enough: Roberge hasn't proffered any Rhode Island Supreme Court case addressing facts and issues similar to those we face today (and our own research has turned up none either). All that said, there are many Rhode Island Supreme Court cases out there adjudicating public policy challenges to UM/UIM insurance policy provisions under the Rhode Island Uninsured Motorist Statute. See Am. States Ins. Co. v. LaFlam, 69 A.3d 831, 835-37 (R.I. 2013) (surveying Rhode Island Supreme Court cases addressing public policy challenges under the Rhode Island Uninsured Motorist Statute). And from those cases, several overarching principles can be gleaned.

To begin, the Rhode Island Uninsured Motorist Statute has a "broad statutory purpose," Pin Pin H. Su. v. Kemper Ins. Cos./Am. Motorists Ins. Co., 431 A.2d 416, 419 (R.I. 1981), which is "to afford protection to the insured against economic loss resulting from injuries sustained by reason of the negligent operation of uninsured motor vehicles or hit-and-run motor vehicles," Henderson v. Nationwide Ins. Co., 35 A.3d 902, 906 (R.I. 2012) (citation and internal quotation marks omitted). "Contracts for uninsured-motorist coverage . . . must be construed in light of the public policy mandated by the Legislature," and in so doing, "[t]he primary object remains indemnification for an insured's

- 26 -

loss rather than defeat of his or her claim." DiTata v. Aetna Cas. & Sur. Co., 542 A.2d 245, 247 (R.I. 1988). Nevertheless, "[p]ublic policy in this area . . . is not entirely one-sided" and courts must be "mindful that [t]he legislative purpose of the statute was not to guard against all economic loss, and [the Rhode Island Supreme Court has] held that reasonable limitations will be imposed on the construction of the uninsured-motorist statute to afford[] insurers some financial protection from unwarranted claims." Am. States Ins. Co., 69 A.3d at 835 (third and fifth alteration in original) (citation and internal quotation marks omitted). Ultimately, "the determination of whether a particular contractual provision violates public policy is case-specific." Id.

Undergoing that case-specific inquiry, the Rhode Island Supreme Court has indicated that certain types of provisions do offend public policy, while others don't. On the offensive-to-public-policy side are UM/UIM policy provisions that (1) "restrict coverage afforded by the uninsured-motorist statute"; (2) "curtail an insured's recovery in instances in which the insured has not recovered the amount of his or her actual loss"; (3) "exclude[ certain types of vehicles] from the definition of 'uninsured motor vehicle'"; and (4) "deny UM/UIM coverage on impermissible grounds." Id. at 836 (citations omitted). On the not-offensive-to-public-policy side are UM/UIM policy provisions

that (1) "seek to prevent an insured's double recovery"; (2) "exclude UM/UIM coverage when the insured's injuries occur in a vehicle that the insured (or a family member) owns, but elects not to insure under the policy"; and (3) "preclude[] coverage based on a particular use of an insured vehicle by the policyholder." Id. at 836-37 (alteration in original) (citations omitted).

Even with these guideposts, however, we do not feel confident in our ability "to predict [the Rhode Island Supreme Court's] course" on the question of whether this particular UM/UIM provision violates public policy -- try as we might. Hosp. San Antonio, Inc., 47 F.4th at 6 (citation omitted). To spell it out, the statutory text and just-surveyed caselaw seem to point in different directions. On the one hand, it appears to us that, as a matter of statutory text, Roberge has a persuasive argument that the Policy here might not comply with the Rhode Island Uninsured Motorist Statute's requirement that it "provide[] [coverage] in or supplemental to the policy, for bodily injury or death . . . for the protection of persons insured under the policy . . . in an amount equal to the insured's bodily injury liability limits." R.I. Gen. Laws § 27-7-2.1(a). This requirement suggests that the Statute is concerned with ensuring that there be a certain symmetry between the persons afforded liability and UM/UIM coverage in a given insurance policy. Here, though, Roberge is a "person" who is "insured under the policy," insofar as she is an insured for

liability-coverage purposes while operating her own car in the course of her employment, yet she's not an insured for UM/UIM-coverage purposes in those exact same circumstances. Id. Therefore, application of the contract here does not simply "limit an insured's recovery under the UM/UIM statute," which we ourselves have recognized "Rhode Island has . . . a strong public policy against," but serves to completely prevent any type of UM/UIM-coverage recovery whatsoever, despite Roberge clearly being an "[i]nsured" for liability-coverage purposes. Am. States Ins. Co. v. LaFlam, 672 F.3d 38, 39 (1st Cir. 2012) (collecting cases). This -- at the very least arguably -- flies in the face of the Rhode Island Uninsured Motorist Statute's "broad statutory purpose." Pin Pin H. Su., 431 A.2d at 419.

On the other hand, Travelers also makes a good point that the Rhode Island Supreme Court has previously greenlit contractual provisions that exclude certain individuals from UM/UIM coverage and explained the following:

> Neither the terms of the statute nor the public policy expressed therein mandates what class of persons must be extended coverage, nor do they disallow any restriction on that class. Rather, the designation of what persons are insured for purposes of this statute is left to the terms of the particular insurance policy.

Malo v. Aetna Cas. & Sur. Co., 459 A.2d 954, 956-57 (R.I. 1983). For example, in Henderson, the Court upheld an exclusionary

provision which denied the named insured UM/UIM coverage if the vehicle they were injured in was being used "to carry persons or property for a fee." 35 A.3d at 904, 906-09. And in Malo, the Court upheld another exclusionary provision which denied UM/UIM coverage to relatives of the named insured who owned a vehicle not insured by the policy. 459 A.2d at 955-57. However, in neither of these cases did the Rhode Island Supreme Court provide any indication that the plaintiffs did not have liability coverage under the respective polices in those particular circumstances. If the plaintiffs in fact had liability coverage, then Roberge's assertion that the Rhode Island Uninsured Motorist Statute requires a symmetry between the individuals provided liability and UM/UIM coverage might not ultimately prove dispositive of the contrary-to-public-policy issue. In the end, however, there is no Rhode Island Supreme Court case "directly on point." Am. States Ins. Co., 672 F.3d at 43.

Looking to other jurisdictions also doesn't provide us the necessary guidance as to how the Rhode Island Supreme Court would decide this issue. To be sure, there are some courts that have interpreted the uninsured motorist statutes of other states to provide UM/UIM coverage to employees of the named insured when the employees are injured in the course of their employment. See, e.g., Skarbrevik v. Pers. Representative of Est. of Brown, No. W2014-00809-COA-R3-CV, 2015 WL 7184664, at *6 (Tenn. Ct. of App.

Nov. 16, 2015); LaRoche v. State Farm Ins. Co., No. Civ.A. CV 02-271, 2003 WL 23185889, at *3 (Me. Super. Ct. Dec. 19, 2003). But the Rhode Island Supreme Court has admitted before that its decisions in the arena of UM/UIM coverage "may not comport with those in other jurisdictions." Nationwide Mut. Ins. Co. v. Viti, 850 A.2d 104, 108 (R.I. 2004).[12]

This issue, therefore, meets the requirements for certification to a T.  Not only is the Rhode Island Supreme Court's Rule of Appellate Procedure satisfied (to recap, an answer on this question would be outcome-determinative and there's no on-point Rhode Island precedent), R.I. Sup. Ct. R., Art. I, R. 6(a), but also our own requirements are satisfied (to recap, Rhode Island law is not sufficiently clear for us to predict the Rhode Island Supreme Court's answer), R.I. Truck Ctr., LLC, 92 F.4th at 348.

Furthermore, the same federalism and prudence concerns that we mentioned in relation to the Martinelli issue are equally as present here.  The resolution of this issue "will certainly impact future cases."  Am. States Ins. Co., 672 F.3d at 44

---

[12] To add to the complexity, Roberge also raises a litany of sub-arguments relating to the application of the Rhode Island Uninsured Motorist Statute.  For example, Roberge argues that Travelers did not comply with its statutory requirement "to notify the [State], in any renewal, reinstatement, substitute, amended, altered, modified, transfer, or replacement policy, as to the availability of [UM/UIM] coverage or optional limits."  R.I. Gen. Laws § 27-7-2.1(d).  These primarily factual disputes need not be resolved at this juncture.

(citation omitted). And allowing state courts to answer unresolved questions of state law furthers federalism interests underlying our legal system. Id. That is especially true when the unresolved questions involve policy considerations that don't fit neatly in one bucket. See Patel, 81 F.4th at 76. We, therefore, find it prudent to certify the following question to the Rhode Island Supreme Court:

> Does it violate the Rhode Island Uninsured Motorist Statute, R.I. Gen. Laws § 27-7-2.1, and Rhode Island public policy when an employer's auto insurance policy provides liability coverage to employees in the scope of their employment, but does not provide UM/UIM coverage to employees in the scope of their employment based upon the auto involved?

## CERTIFICATION

To summarize, in light of the foregoing, we certify the following two questions[13] to the Rhode Island Supreme Court:

> (1) In light of Martinelli v. Travelers Ins. Cos., 687 A.2d 443 (R.I. 1996), and Rhode Island law, must an employee, who is operating her own personal vehicle while in the scope of her employment, be considered a named insured under her employer's auto insurance policy, despite policy language to the contrary?
>
> (2) Does it violate the Rhode Island Uninsured Motorist Statute, R.I. Gen. Laws § 27-7-2.1, and Rhode Island public policy when an employer's auto insurance policy provides liability coverage to employees in the scope of their employment, but does not provide

___

[13] We are grateful to the parties for their briefing and input as to which questions should be certified to the Rhode Island Supreme Court.

- 32 -

> UM/UIM coverage to employees in the scope of
> their employment based upon the auto involved?

We would welcome any further guidance from the Rhode Island Supreme Court on any other relevant aspect of Rhode Island law that it believes would aid in the proper resolution of the issues presented here.

The clerk of this Court is directed to forward to the Rhode Island Supreme Court, under the official seal of this Court, a copy of the certified questions, this opinion, the district court's opinion, and the merits briefs and appendix filed by the parties. We retain jurisdiction over this case pending resolution of these certified questions. The case shall be stayed until further order of the Court. No costs are awarded at this time.