May 26, 2026

Cynthia A. Roberge          :

v.                          :

Travelers Property Casualty Company   :
of America.

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Cynthia A. Roberge    :

v.         :

Travelers Property Casualty Company :
   of America.

Present: Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

# O P I N I O N

**Justice Lynch Prata, for the Court.** This case comes before the Court pursuant to an order of the United States Court of Appeals for the First Circuit that certified the following questions pursuant to Article I, Rule 6 of the Supreme Court Rules of Appellate Procedure:

> "(1) In light of *Martinelli v. Travelers Ins. Cos.*, 687 A.2d 443 (R.I. 1996), and Rhode Island law, must an employee, who is operating her own personal vehicle while in the scope of her employment, be considered a named insured under her employer's auto insurance policy, despite policy language to the contrary?
>
> "(2) Does it violate the Rhode Island Uninsured Motorist Statute, R.I. Gen. Laws § 27-7-2.1, and Rhode Island public policy when an employer's auto insurance policy provides liability coverage to employees in the scope of their employment, but does

- 1 -

not provide UM/UIM coverage to employees in the scope of their employment based upon the auto involved?” *Roberge v. Travelers Property Casualty Company of America*, 112 F.4th 45, 60-61 (1st Cir. 2024) (*Roberge II*).

For the reasons set forth in this opinion, we answer both questions in the negative.

## Facts and Travel

In 2004, the defendant, Travelers Property Casualty Company of America (Travelers), first issued an auto insurance policy (the Policy) to the State of Rhode Island (the state), with the "named insured"[1] listed as "State of Rhode Island." This Policy was renewed annually including between February 1, 2018, and February 1, 2019, which is the relevant renewal period for our purposes. Under the Policy, Travelers issued the state supplemental auto insurance that extended uninsured motorist ("UM")/underinsured motorist ("UIM") coverage[2] to the named insured for

---

[1] Named insureds are also "commonly referred to as class-I insureds, and occupants of an insured vehicle are commonly referred to as class-II insureds." *Roberge v. Travelers Property Casualty Company of America*, 112 F.4th 45, 48 n.2 (1st Cir. 2024) (*Roberge II*) (brackets omitted) (quoting *Finch v. Centennial Insurance Company*, 650 A.2d 495, 497 (R.I. 1994)). Generally, the policyholder is the "named insured," and occupants of an insured vehicle are "insureds." *See Finch*, 650 A.2d at 497. "These distinctions are widely recognized and frequently applied to cases involving employees who are injured while occupying vehicles owned by their employers and insured under commercial-fleet policies." *Id.* at 498. In such cases "[t]hat employee is generally classified as a class-II insured * * *." *Id.*

[2] An "underinsured motorist" is "the owner or operator of a motor vehicle who carries automobile liability insurance with coverage in an amount less than the limits or damages that persons insured pursuant to [G.L. 1956 § 27-7-2.1] are legally entitled to recover * * *." *Archambault v. Federal Insurance Company*, 690 A.2d 1348, 1349 (R.I. 1997) (quoting § 27-7-2.1(g)); *see Roberge II*, 112 F.4th at 48 n.1.

bodily injury damages with minimum limits of $25,000 for each person or $50,000 for each accident. The policy included liability coverage up to $1,000,000 per accident. The state rejected coverage for uninsured motorist property damage.

For both uninsured and liability coverage, the state had the option to select which automobiles would be covered under the Policy for each coverage type, respectively, from ten designation symbols (1-9, 19). Each symbol indicated a different automobile description. For UM/UIM coverage, the state selected symbol "2," which provided coverage for "Owned 'Autos' Only." For liability coverage, the state selected symbol "1," which provided coverage for "Any 'Auto.'"

The plaintiff, Cynthia A. Roberge (Roberge), was employed by the State of Rhode Island. As part of her employment, Roberge commuted to various work sites in Rhode Island using her personal vehicle. Although the state owned a fleet of automobiles that employees were allowed to use for employment-related purposes, Roberge maintains that it was common practice for employees to use their personal vehicles when "no [s]tate car was available -- as was the case on the date of the accident." *Roberge II*, 112 F.4th at 49.

On October 18, 2018, no state vehicle was available. While driving her own vehicle, Roberge was involved in an auto collision with an underinsured motorist.

---

Uninsured motorist coverage includes underinsured motorist coverage. Section 27-7-2.1(g).

As a result of the accident, Roberge sustained injuries that prevented her from returning to work. Roberge filed a claim with Travelers for underinsured motorist coverage benefits. Travelers denied Roberge in all three of her attempts to seek UM/UIM coverage under the Policy, explaining that underinsured motorist coverage was only afforded to "covered auto[s]" and at the time of her injury Roberge was operating her own vehicle.

On April 4, 2021, Roberge filed an action against Travelers in Providence County Superior Court and raised five counts: breach of contract (count I); declaratory judgment that she was a named insured under the Policy (count II); declaratory judgment that the Policy offered her coverage up to $1,000,000 (count III); declaratory judgment that Travelers' acts were malicious in its denial of coverage and entitled her to punitive damages (count IV); and bad faith (count V). Travelers timely removed the case to federal court, asserting diversity jurisdiction. In 2023, Travelers filed a motion for summary judgment on all five counts, alleging that "Roberge was not entitled to UM/UIM coverage under the Policy or under Rhode Island insurance law." *Roberge II*, 112 F.4th at 49. Thereafter, Roberge filed a cross-motion for summary judgment on counts I-III, arguing that "she was entitled to UM/UIM coverage, notwithstanding the Policy's language," relying on this Court's decision in *Martinelli*, or, alternatively, pursuant to the Rhode Island Uninsured Motorist Statute, G.L. 1956 § 27-7-2.1.

A judge of the United States District Court for the District of Rhode Island granted Travelers' motion for summary judgment and denied plaintiff's cross-motion. The district court judge reasoned that Roberge was not entitled to class-I coverage as a "Named Insured" under the Policy issued to her employer. *Roberge v. Travelers Property Casualty Company of America*, 707 F.Supp. 3d 181, 186 (D.R.I. 2023) (*Roberge I*). Also, Roberge was not entitled to class-II coverage as an "insured" because she was injured while operating her personal vehicle and not a "covered 'auto'" as defined in the Policy. *Id.* at 185. Additionally, the district court held that neither *Martinelli* nor the Rhode Island Uninsured Motorist Statute, § 27-7-2.1, entitled Roberge to recovery under the Policy. *Id.* at 186, 188. On appeal, the United States Court of Appeals for the First Circuit determined that the issue of whether Roberge was entitled to UM/UIM coverage under state law would be "outcome-determinative" pursuant to this Court's interpretation of Rhode Island uninsured motorist law. *Roberge II*, 112 F.4th at 50. Accordingly, the First Circuit certified the two previously stated questions of law to this Court.

**Standard of Review**

Article I, Rule 6(a) of the Supreme Court Rules permits this Court to

> "answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, or of the District of Columbia, [or] a United States District Court * * * when requested by the certifying court if there are any questions of law of this state involved in a proceeding before that court which may

- 5 -

be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court."

"We have held that 'certified questions are questions of law; and, consequently, this Court reviews them in a *de novo* manner.'" *Johnson v. Johnson*, 264 A.3d 835, 837 (R.I. 2021) (brackets omitted) (quoting *In re Kapsinow*, 220 A.3d 1231, 1233 (R.I. 2019)).

## Discussion

## Question 1

We begin by considering whether this Court's dictum in *Martinelli*, or Rhode Island law, requires that Roberge be considered a "named insured," for purposes of UM/UIM coverage, under the Policy issued to her employer despite contrary Policy language. *Martinelli*, 687 A.2d at 446. Indeed, it is undisputed that under the text of the Policy, Roberge is not entitled to UM/UIM coverage. *See Roberge II*, 112 F.4th at 50. Roberge argues, however, that despite the Policy not providing her coverage, this Court's holding in *Martinelli* requires that she be afforded such coverage. *See Martinelli*, 687 A.2d at 446. We disagree. Neither *Martinelli* nor Rhode Island law requires that an employee be considered a "named insured" under his or her employer's auto insurance policy when there is plain language in the policy to the contrary.

- 6 -

In considering the policy language, the federal district court found that the Policy's terms unambiguously identified the State of Rhode Island as the "Named Insured." *Roberge I*, 707 F.Supp. 3d at 185. The district court noted that the Policy specified that if the "Named Insured" was an organization, the Policy provided coverage for "anyone occupying a covered 'auto.'"[3] *Id.* Accordingly, the district court determined that "[b]ecause Ms. Roberge was driving her own car and not operating a covered 'auto' as defined in the UM/UIM policy * * * she [wa]s not entitled to coverage."[4] *Id.* Additionally, the district court distinguished Roberge's circumstances from the "circumstances that the [*Martinelli*] court contemplated in [a] theoretical 'scope of employment' exception." *Id.* at 186. The district court explained that "[i]n *Martinelli*, [this] Court envisioned UM/UIM coverage for an injured party who was a shareholder or employer—a person who is aligned with the corporation that was the named insured." *Id.* Conversely, Roberge "was an

---

[3] The Policy specified that if the "named insured" was "[a] partnership, limited liability company, corporation or any other form of organization," then "[a]nyone 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto'" was entitled to UM/UIM coverage. The Policy defined a "temporary substitute" as a motor vehicle used in place of a "covered auto" because the "covered auto" was "out of service because of its breakdown, repair, servicing, 'loss' or destruction."

[4] The district court found that Roberge's personal car was neither a state-owned vehicle, nor did it qualify as a "temporary substitute for a covered 'auto.'" *Roberge v. Travelers Property Casualty Company of America*, 707 F.Supp. 3d 181, 185 n.1, 186 (D.R.I. 2023) (*Roberge I*). The court reasoned that, "a person can be an 'insured' if they are driving another car because the covered 'auto' is out of service. There is no dispute that that was not the case here." *Id.* at 185 n.1.

employee with no corporate affiliation," and thus, could not be considered a "named insured" for purposes of UM/UIM coverage under the Policy. *Id.*

On appeal to the First Circuit, Roberge maintained that "the *Martinelli* exception exists[,]" and that, "the exception clearly applies here because she was acting within the scope of her employment at the time of the accident." *See Roberge II*, 112 F.4th at 55; *see also Martinelli*, 687 A.2d at 446. Conversely, Travelers contended that *Martinelli* did not create such an exception. *See Roberge II*, 112 F.4th at 55. The court acknowledged that this Court "has never delineated the precise contours and circumstances of this so-called [*Martinelli*] exception." *Id.* at 56. Accordingly, the question before us is whether *Martinelli*, or Rhode Island law, requires that Roberge be considered a named insured under the Policy for the purposes of UM/UIM coverage despite conflicting policy language. We answer this question in the negative.

In *Martinelli*, the plaintiff, David Martinelli (Martinelli), was injured in an auto accident while riding as a passenger in a vehicle owned and operated by another individual. *Martinelli*, 687 A.2d at 444. Unable to recover the full extent of his damages under the driver's auto insurance policy, Martinelli submitted a claim for underinsured motorist benefits under the commercial garage policy issued to his

company, Select Auto Sales, Inc. (Select Auto).[5] *Id.* The defendant, Travelers Insurance Companies, denied Martinelli's claim. *Id.* As a result, Martinelli filed a petition for declaratory judgment in Superior Court, seeking a declaration that he be considered a named insured under Select Auto's policy. *Id.* at 444-45. On appeal, this Court held that Martinelli was not entitled to UM/UIM coverage under Select Auto's auto insurance policy because the policy unambiguously listed the company as the "named insured." *Id.* at 445-46. This Court reasoned that Martinelli was not entitled to class-I coverage because the plain text of the defendant's policy "clearly defined" the "named insured" as Select Auto.[6] *Id.* Likewise, Martinelli did not qualify for class-II coverage because he "was not occupying an insured vehicle" at the time of his injury.[7] *Id.* at 446.

In so holding, this Court stated, "we do not foreclose the possibility that in different circumstances this Court could conclude that an individual shareholder or employer might be eligible for uninsured-motorist coverage under a policy that listed the corporation as the named insured." *Martinelli*, 687 A.2d at 446. Specifically, that "a shareholder or an employee who is injured while acting within the scope of

---

[5] Martinelli was the principal shareholder and general manager of Select Auto. *Martinelli v. Travelers Insurance Companies*, 687 A.2d 443, 445 (R.I. 1996).

[6] "[I]t is clear that 'you' referred to Select Auto and not to [Martinelli] * * * [b]ecause there was no ambiguity in the terms of the Travelers policy, we shall not depart from the literal language of that policy." *Martinelli*, 687 A.2d at 446.

[7] "It was undisputed that plaintiff was not occupying an insured vehicle, and, thus, did not qualify for class-II coverage." *Martinelli*, 687 A.2d at 446.

his or her employment might be considered the named insured for purposes of uninsured-motorist coverage." *Id.* Therefore, it is clear that *Martinelli* left the door open for the possibility of UM/UIM coverage for a shareholder or employee that is injured while acting within the scope of employment. *See id.* This is not that scenario, however. Unlike Martinelli, who was a shareholder and general manager of a small, closely held company, Roberge worked for a government entity that employed approximately 17,000 employees.[8] *See id.* at 445. Thus, the adoption of Roberge's argument would require that every State of Rhode Island employee who is injured while acting within the scope of their employment may be considered the "named insured" for purposes of UM/UIM coverage. This notion flies in the face of the contracted Policy between the state and Travelers.

Roberge suggests that, under *Martinelli*, our determination of whether she is entitled to UM/UIM coverage—in the face of contrary policy language—turns on whether she was acting within the scope of her employment when she was injured. She is mistaken. In *Martinelli*, this Court did not fully examine whether a shareholder or employee could be eligible for UM/UIM coverage under a policy that listed the company as the "named insured" because the plaintiff "was *clearly* acting outside the scope of his employment at the time of his accident." *Martinelli*, 687

---

[8] In 2018, the year of Roberge's injury, the State of Rhode Island employed approximately 17,000 people. *State of Rhode Island Transparency Portal*, RI Jobs, https://transparency.ri.gov/payroll/.

A.2d at 446 (emphasis added). First, the Court looked to the defendant's policy and determined that the plaintiff was neither entitled to class-I nor class-II coverage. *See id.* at 445-46. Next, the Court indicated that "[i]t is conceivable that a shareholder or an employee who is injured while acting within the scope of his or her employment might be considered the named insured * * *." *Id.* at 446. In so holding, the Court acknowledged that "[it] need not make such a determination[]" because the facts presented in *Martinelli*, as well as the cases the Court considered in rendering its decision, all involved claimants who were not acting within the scope of their employment.[9] *Id.* at 446 & n.2. Accordingly, the *Martinelli* Court—not having the proper facts before it to fully examine a hypothetical situation—ended its inquiry. *Id.* Thus, the fact that Roberge was acting within the scope of her employment when she was injured is neither dispositive of her entitlement to coverage under the policy, nor does it undermine the grant of summary judgment.

Our view is consistent with this Court's holding in *Medeiros v. Anthem Casualty Insurance Group*, 796 A.2d 1078 (R.I. 2002). In *Medeiros*, the decedents were killed in a car accident on their way home from a Red Sox game at Fenway Park in Boston. *Medeiros*, 796 A.2d at 1079. The decedents each "owned 25 percent

---

[9] In *Martinelli*, this Court considered cases from other jurisdictions, all of which involved claimants who "were likewise injured while acting outside the scope of their employment." *Martinelli*, 687 A.2d at 446 n.2. Therefore, the Court did not explore a scenario where a shareholder or employee might be entitled to uninsured motorist benefits if injured within the scope of their employment. *See id.* at 446.

of two closely held corporations that carried separate insurance policies providing coverage for two cars, neither of which was involved in [the] accident * * *." *Id.* The plaintiff, an executrix of one of the decedent's estates, filed suit in Superior Court seeking uninsured motorist benefits under both policies. *Id.* The insurance companies jointly moved for summary judgment, which the trial justice granted. *Id.*

On appeal to this Court, the plaintiff argued that the trial justice's grant of summary judgment was improper because there were still unresolved issues related to who was covered by the policies. *See Medeiros*, 796 A.2d at 1079. This Court noted that the plaintiff's case "[fell] squarely within [this Court's] holding in *Martinelli*" and held that "there [was] no evidence tending to show that the decedent [fell] within [the *Martinelli*] exception." *Id.* at 1080. The Court reasoned that "[t]he plaintiff presented no direct evidence that the decedents were engaged in any business-related activity." *Id.* Therefore, this Court has clearly accepted the possibility of a *Martinelli* exception; however, the facts presented in *Medeiros* did not allow us to fully examine such an exception. *See id.* We stopped our inquiry after determining that the decedents were not within the scope of their employment at the time of the accident. *See id.* Because the decedents were outside the scope of their employment, the facts of that case did not trigger the hypothetical scenario that *Martinelli* alluded to for shareholders or employees injured while acting within their scope of employment. *See id.*; *see also Martinelli*, 687 A.2d at 446. Thus, in

*Medeiros*, when we held that the decedents were not afforded UM/UIM coverage under a plain reading of the policies, we did not examine whether the decedents could be considered the "named insured" because the shareholders were not within the scope of their employment. *See Medeiros*, 796 A.2d at 1080.

An examination of both *Martinelli* and *Medeiros* squarely underscore the reasons to reject Roberge's argument that *Martinelli* or Rhode Island law requires that she be afforded UM/UIM coverage despite contrary Policy language. First, this Court has only confronted the applicability of the *Martinelli* exception in instances where the plaintiff was a principal shareholder or employee of a closely held company to which the policy was issued, not where employees of government entities sought coverage under policies issued to the government—such is the case with Roberge. *See Martinelli*, 687 A.2d at 444; *see also Medeiros*, 796 A.2d at 1079. Second, the question of whether an employee is acting within the scope of their employment when injured is not outcome determinative. It is merely a factor in our analysis provided that the circumstances are present to explore an exception under *Martinelli*. The policy's text is, undoubtedly, the cornerstone. Accordingly, in the present case, Roberge is not entitled to UM/UIM benefits as a "named insured" under the auto policy issued to her employer.

**Question 2**

Next, we turn to the issue of whether Travelers violated the Rhode Island Uninsured Motorist Statute, G.L. 1956 § 27-7-2.1, or public policy, by failing to provide Roberge uninsured motorist coverage despite her being entitled to liability coverage under the same policy. *Roberge II*, 112 F.4th at 57-58. We hold that Travelers did not violate the statute nor offend public policy.

"It is well established that this Court reviews 'questions of statutory interpretation *de novo*.'" *In re J.T.*, 252 A.3d 1276, 1280 (R.I. 2021) (quoting *Crenshaw v. State*, 227 A.3d 67, 71 (R.I. 2020)). "In matters of statutory interpretation our ultimate goal is to give effect to the purpose of the act as intended by the Legislature." *Verizon New England Inc. v. Savage*, 337 A.3d 689, 694 (R.I. 2025) (quoting *Sosa v. City of Woonsocket*, 297 A.3d 120, 124 (R.I. 2023)). "[W]hen the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Id.* (quoting *Sosa*, 297 A.3d at 124). "However, when faced with an ambiguous statute, it is incumbent upon this Court to apply the rules of statutory construction and examine the statute in its entirety to determine the intent and purpose of the Legislature." *Id.* (quoting *In re J.T.*, 252 A.3d at 1280).

"Furthermore, 'in effectuating the Legislature's intent,' this Court reviews and considers 'the statutory meaning most consistent with the statute's policies or

obvious purposes.'" *In re J.T.*, 252 A.3d at 1280 (quoting *Providence Teachers' Union Local 958, AFT, AFL-CIO v. Hemond*, 227 A.3d 486, 494 (R.I. 2020)). "In so doing, 'this Court will not construe a statute to reach an absurd result.'" *LMG Rhode Island Holdings, Inc. v. Office of McKee*, 335 A.3d 444, 449 (R.I. 2025) (quoting *Koback v. Municipal Employees' Retirement System of Rhode Island*, 252 A.3d 1247, 1251 (R.I. 2021)).

This Court has stated that "contract provisions, particularly those delineating uninsured-motorist coverage, are to be interpreted in light of the public policy for which the Legislature enacted the uninsured-motorist-coverage statute." *Rueschemeyer v. Liberty Mutual Insurance Company*, 673 A.2d 448, 450 (R.I. 1996) (quoting *Bartlett v. Amica Mutual Insurance Co.*, 593 A.2d 45, 49 (R.I. 1991)). Accordingly, we turn to our previous interpretation that

> "in enacting [§ 27-7-2.1], the legislature intended that, as a matter of public policy, protection should be given [to] the named insured in such policies [to guard] against economic loss resulting from injuries sustained by reason of the negligent operation of uninsured motor vehicles or hit-and-run motor vehicles." *Malo v. Aetna Casualty and Surety Company*, 459 A.2d 954, 956 (R.I. 1983) (brackets omitted) (quoting *Aldcroft v. Fidelity and Casualty Co. of New York*, 106 R.I. 311, 318, 259 A.2d 408, 413 (1969)).

Section 27-7-2.1(a), states, in relevant part:

> "No policy insuring against loss resulting from liability imposed by law for property damage caused by collision, bodily injury, or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle

- 15 -

shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided in or supplemental to the policy, for bodily injury or death in limits set forth in each policy, but in no instance less than the limits set forth in § 31-47-2(13)(i)(A) * * * for the protection of persons insured under the policy who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of property damage, bodily injury, sickness, or disease, including death, resulting from that injury, sickness, or disease." Section 27-7-2.1(a).

Roberge contends that even if this Court determines that she was not occupying a "covered auto" under the Travelers Policy, she should nonetheless be entitled to UM/UIM coverage pursuant to § 27-7-2.1 because the Policy would have provided her liability coverage if she were the cause of the subject accident.[10] She argues that it is undisputed that "her vehicle [was] insured with liability coverage of $1,000,000 under Travelers' Policy at the time of the accident. As such, Travelers also was required to provide uninsured motorist coverage to [her] pursuant to the Rhode Island Uninsured Motorist Statute in an amount equal to the liability limits of $1,000,000." We disagree.

---

[10] Counsel for Roberge raised § 2.8 of Widiss and Thomas's treatise, *Uninsured and Underinsured Motorist Insurance*, at oral argument, specifically the statement that "uninsured motorist coverage must protect all classes of persons who are protected by the liability coverage." 1 Alan I. Widiss & Jeffrey E. Thomas, *Uninsured and Underinsured Motorist Insurance* § 2.8 at 81 (3d ed. 2025). However, § 2.8 also notes that "[i]n a few states, the uninsured motorist statutes clearly specify who must be an insured * * *." *Id.* at 82. Rhode Island has such a statute. *See* § 27-7-2.1(a).

First, under § 27-7-2.1, a "'policy insuring against loss' means a policy that provides primary coverage for the insured motor vehicle[.]" Section 27-7-2.1(c)(1). Additionally, § 27-7-2.1(a) requires that if an insurer of an auto insurance policy provides primary coverage for an insured motor vehicle, the policy must also provide for uninsured motorist coverage. *See* § 27-7-2.1(a). Simply put, the statute requires an insurer to extend uninsured motorist coverage to the insured only when the issued policy provides primary coverage for the insured motor vehicle. *See id.* This Court has recognized that "'[p]rimary coverage' is provided when an insurer is liable for the risk insured against, regardless of any other available coverage." *Brown v. Travelers Insurance Company*, 610 A.2d 127, 128 (R.I. 1992). Similarly, we have stated that § 27-7-2.1 "imposes a duty on a policy holder's *own* insurer to provide coverage for injuries caused by an uninsured motorist." *Van Hoesen v. Lloyd's of London*, 134 A.3d 178, 182 (R.I. 2016) (emphasis added). Therefore, the statute guarantees that "the insured who has been injured is *compensated by his or her own insurance company*." *Id.* (quoting *VanMarter v. Royal Indemnity Co.*, 556 A.2d 41, 43 (R.I. 1989)).

Here, it is undisputed that Travelers' Policy was not the primary insurance provider for Roberge's personal vehicle, which was the auto involved in the accident. Rather, Roberge held an auto insurance policy with USAA Casualty Insurance Company where she was explicitly listed as the "named insured" and her

- 17 -

car was covered for UM/UIM coverage with bodily injury limits of $100,000.  We cannot intervene to extend coverage beyond the contractual agreement between the parties absent a finding of ambiguity in the Policy language.  Therefore, Travelers is not required to extend coverage beyond its intended agreement with the state, particularly where Travelers calculated the state's premium costs based on coverage for a select number of vehicles.[11]

Additionally, § 27-7-2.1 does not mandate an extension of uninsured motorist coverage to a class of person that is contrary to policy language that prevents such coverage.  Rather, UM/UIM coverage is required only for "persons insured under the policy * * *." Section 27-7-2.1(a).  Although Roberge would be entitled to liability coverage under the Policy, § 27-7-2.1(a) specifies that uninsured motorist coverage is required "for the protection of persons insured under the policy who are legally entitled to recover damages * * *." *Id.*  Roberge is not included in this classification of people "legally entitled to recover damages" under the Travelers Policy because she was not operating a vehicle owned by the state when she was injured.  Indeed, because Roberge was not operating an insured automobile, she was not entitled to UM/UIM coverage benefits under the Policy.  Therefore, Travelers is not mandated to provide her UM/UIM coverage under the statute.

---

[11] In October 2017, the state verified its information in a policy renewal offer, which provided UM/UIM coverage for 2,134 state owned vehicles.

This conclusion is consistent with this Court's precedent.

> "Neither the terms of the statute nor the public policy expressed therein mandates what class of persons must be extended coverage, nor do they disallow any restriction on that class. Rather, the designation of what persons are insured for purposes of this statute is left to the terms of the particular insurance policy." *Malo*, 459 A.2d at 956-57 (upholding an exclusionary provision in an auto insurance policy that prevented an injured "relative" from receiving UM/UIM coverage, if the relative owned a separate personal automobile).

Section 27-7-2.1 acts as a safeguard for persons who are entitled to coverage under a policy as "insureds." It does not, however, serve to circumvent clear policy language and extend coverage to those, like Roberge, who have explicitly been restricted from both class-I and class-II coverage based on the auto involved. Accordingly, Travelers' Policy does not violate § 27-7-2.1, or public policy, by preventing Roberge from recovering uninsured motorist coverage based on her personal vehicle being the subject of the accident, as opposed to a qualified automobile under the Policy.

While we acknowledge the seriousness of the collision and the injuries suffered by Roberge, we remain mindful that "the legislative purpose of [§ 27-7-2.1] was not to guard against all economic loss, and [this Court has] held that reasonable limitations will be imposed on the construction of the uninsured-motorist statute to afford insurers some financial protection from unwarranted claims." *Henderson v. Nationwide Insurance Company*, 35 A.3d 902, 906 (R.I. 2012) (brackets and

deletion omitted) (quoting *Ladouceur v. Hanover Insurance Co.*, 682 A.2d 467, 470 (R.I. 1996)); *see id.* at 907 ("[A]lthough public policy favors indemnification for injuries suffered by insureds at the hands of uninsured motorists, it nonetheless does not require insurance companies to provide policyholders with uninsured motorist coverage that protects them in virtually every circumstance.").

## Conclusion

For the reasons stated herein, we answer both certified questions in the negative.

Justice Goldberg participated in the decision but retired prior to its publication.

**Justice Robinson, dissenting.** After giving the matter careful thought, I have concluded that I have no choice but to respectfully dissent from the majority's opinion responding to the first of the two questions posed by the United States Court of Appeals for the First Circuit.[1] That first question reads in its entirety as follows:

> "In light of *Martinelli v. Travelers Ins. Cos.*, 687 A.2d 443
> (R.I. 1996), and Rhode Island law, must an employee, who

---

[1]     This dissenting opinion will not address the second question posed by the Court of Appeals or the majority's response thereto. I have decided to limit myself to addressing the first question and what I consider to be the significant implications of the *Martinelli* exception. *See Martinelli v. Travelers Insurance Companies*, 687 A.2d 443, 446 (R.I. 1996).

- 20 -

is operating her own personal vehicle while in the scope of her employment, be considered a named insured under her employer's auto insurance policy despite language to the contrary?" *Roberge v. Travelers Property Casualty Company of America*, 112 F.4th 45, 60-61 (1st Cir. 2024).

I am well aware that this case is both troubling and challenging. I am genuinely impressed by the manner in which the majority has sought to find guidance in the morass of arguably relevant precedent as well as traditional contract law principles in support of the conclusion that it has reached.[2] In the end, however, I have decided that I cannot go along. I confess that I am not entirely sure that I am right.[3] Nonetheless, there comes a point when the die must be cast, and it is

---

[2]    I acknowledge that the majority's response to the first question has a certain immediate appeal if one is of the view that a strict and literalistic letter-of-the-law approach is the best approach for resolving the difficult issue that this case involves—in an area of the law where this Court has specifically endorsed broad coverage. I simply do not subscribe to that approach to the question posed by the Court of Appeals, which approach is accurately summarized in the majority's pithy declaration that "[t]he policy's text is, undoubtedly, the cornerstone." In my judgment, this is one of those comparatively rare cases where it is necessary to go beyond the black letter text of the insurance policy and interpret that text liberally in accordance with what the General Assembly has mandated and with what this Court has endorsed with respect to UM/UIM coverage. *See Aetna Life and Casualty Co. v. Carrera*, 577 A.2d 980, 983 (R.I. 1990) (Weisberger, J.) (referring to "the general principle favoring broad coverage").

[3]    *See United States v. Klinger*, 199 F.2d 645, 648 (2d Cir. 1952) (Learned Hand, J.) ("Flinch as we may, what we do, and must do, is to project ourselves, as best we can, into the position of those who uttered the words, and to impute to them how they would have dealt with the concrete occasion. He who supposes that he can be certain of the result is the least fitted for the attempt.").

- 21 -

ultimately my view that the first of the two certified questions should be answered in the affirmative.

In my judgment, the majority opinion's response to the first question errs because it reads far too narrowly the language in the pivotal dictum[4] that has come to be known as "the *Martinelli* exception." *See Martinelli v. Travelers Insurance Companies*, 687 A.2d 443, 446 (R.I. 1996).

To my mind the following sentence in the paragraph in this Court's unanimous *Martinelli* opinion which contains "the *Martinelli* exception" describes a scenario that clearly is relevant to the facts presented by the instant case:

> "It is conceivable that a shareholder or an employee who is injured while acting within the scope of his or her employment might be considered the named insured for

---

[4] I am well aware that the crucial language in the *Martinelli* opinion that articulates "the *Martinelli* exception" is technically dictum. However, it is dictum with a history and an after-life of its own. Since the time when it originally appeared in the *Martinelli* opinion, it has been referred to in subsequent opinions of this Court and others almost as though it were an actual holding. *See Roberge v. Travelers Property Casualty Company of America*, 112 F.4th 45, 52-56 (1st Cir. 2024) (thoughtfully and meticulously discussing "the so-called *Martinelli* exception" and stating that "there is some reason to believe that [the Rhode Island Supreme] Court recognizes such an exception"); *Medeiros v. Anthem Casualty Insurance Group*, 796 A.2d 1078, 1080 (R.I. 2002); *Medeiros v. Aetna Casualty & Surety Company of America*, No. C.A. 01-4842, 2003 WL 23195558, at *5 (R.I. Super. Dec. 8, 2003) (Indeglia, J.) (opining that "even if the *Martinelli* exception constituted dicta, that is no longer the case" due to this Court's treatment of the exception in this Court's above-cited 2002 *Medeiros* opinion).

purposes of uninsured-motorist coverage." *Martinelli*, 687 A.2d at 446.[5]

It is important to focus on the fact that that crucial sentence speaks of "**an employee** who is injured while acting within the scope of his or her employment * * *." *Id.* (emphasis added). No adjective or other modifier narrows the meaning of "employee" in that sentence.

For that reason, I respectfully but unequivocally take issue with certain statements in the majority opinion concerning the *Martinelli* exception—namely, that this Court "has only confronted the applicability of the *Martinelli* exception in instances" where the claimant, who was injured in the scope of his or her employment, was a "shareholder and general manager of a small, closely held company" to which the policy was issued.

While it is true that the plaintiff in *Martinelli* had sought coverage pursuant to a policy issued to a company called Select Auto Sales, Inc., which appears to have been a small business, the actual language in the *Martinelli* opinion is in no way

---

[5]     It is important to keep in mind that the basis for the actual holding in *Martinelli*, which denied Mr. Martinelli uninsured motorist benefits, was the fact that he "was clearly acting outside the scope of his employment at the time of his accident." *Martinelli*, 687 A.2d at 446. Similarly, there was no evidence presented that the decedent in *Medeiros v. Anthem Casualty Insurance Group*, 796 A.2d 1078 (R.I. 2002), was engaged in work-related activity. *Medeiros*, 796 A.2d at 1080. In the present case, by contrast, it is undisputed that Ms. Roberge was indeed acting within the scope of her employment when she was injured in what the majority opinion rightly describes as a serious collision.

- 23 -

limited to the small business context. *Martinelli*, 687 A.2d at 444, 446. That opinion speaks in very broad terms of "**an employee** who is injured while acting within the scope of his or her employment * * *." *Id.* at 446 (emphasis added). Contrary to what the majority opinion in the instant case indicates, the *Martinelli* exception does not make any reference to a requirement that the injured employee have been employed by "a small, closely held company." In my judgment, the majority errs in confining the principle for which the *Martinelli* exception stands to cases that closely parallel the particular factual setting of that case.

It is noteworthy that, in *Medeiros v. Anthem Casualty Insurance Group*, 796 A.2d 1078 (R.I. 2002), where this Court paraphrased the *Martinelli* exception, there is no indication that the exception could only be invoked in the small business context. *Medeiros*, 796 A.2d at 1080. The following is the pertinent language from the *Medeiros* opinion:

> "We agree with the plaintiff that in *Martinelli*, this Court suggested that shareholders and employees acting within the scope of their employment might be considered the named insured for purposes of uninsured motorist coverage. However, there is no evidence tending to show that the decedent falls within this exception. * * * The plaintiff presented no direct evidence that the decedents were engaged in any business-related activity. Therefore, the grant of summary judgment was appropriate in this case." *Id.*

To my mind, it is significant that, in this Court's opinion in *Medeiros* (decided six years after the *Martinelli* opinion was issued), there is no suggestion that the noun

"employees" applies only to employees of "a small, closely held company" as the majority would have it.

I am convinced that, given what appear to be the actual facts of the instant case,[6] the strict construction approach to the policy provisions for which the insurer advocates and which the majority has adopted runs contrary to this Court's liberal approach in the UM/UIM domain and would in my view bring about an unjust result. *See, e.g.*, *DiTata v. Aetna Casualty and Surety Company*, 542 A.2d 245, 247 (R.I. 1988) ("Contracts for uninsured motorist coverage * * * must be continued in light of the public policy mandated by the Legislature. * * * *The primary object remains indemnification for an insured's loss rather than defeat of his or her claim.*") (emphasis added); *see also Peerless Insurance Company v. Luppe*, 118 A.3d 500, 510 (R.I. 2015) (referring to "the general principle favoring broad coverage" and then summarizing that principle by quoting with approval the following language from the Supreme Court of New Jersey: "Where the policy provision under examination relates to the inclusion of persons other than the named insured within the protection afforded, a broad and liberal view is taken of the coverage extended" (brackets omitted) (first quoting *Aetna Life and Casualty Co. v. Carrera*, 577 A.2d

---

[6]    I suspect that, if this case goes forward, a certain amount of discovery will perhaps be necessary in order to further "pin down" certain facts—notably regarding the availability of the State of Rhode Island's fleet of vehicles and Ms. Roberge's attempts to avail herself of same.

980, 983 (R.I. 1990); then quoting *Mazzilli v. Accident & Casualty Insurance Co. of Winterthur, Switzerland*, 170 A.2d 800, 804 (N.J. 1961))).

It is my view that, subject to the caveat expressed in footnote 6 *supra*, Ms. Roberge should "be considered a named insured under her employer's auto insurance policy, despite policy language to the contrary."[7] My reasoning is quite straightforward. It appears to be undisputed that the named insured (the State of Rhode Island) has a rather large fleet of vehicles that State employees may use to conduct State business. It is noteworthy that the policy at issue provides UM/UIM coverage if a State employee uses his or her own car when working within the employee's scope of employment (as Ms. Roberge was) when the State's cars are "out of service because of [their] breakdown, repair, servicing, 'loss' or destruction." *Roberge*, 112 F.4th at 48, 49 n.4. It also appears that, on October 18, 2018 (the date on which Ms. Roberge was involved in a very serious accident), no vehicle from that fleet was available for Ms. Roberge to use in carrying out her official duties. *Id.* at 49 & nn. 4 & 5.[8]

It strikes me as being fundamentally unfair and contrary to the liberal spirit of Rhode Island's approach to UM/UIM coverage to deprive Ms. Roberge of such

---

[7] *Roberge*, 112 F.4th at 60-61.

[8] But see footnote 6 *supra* as to the possible need for further discovery.

coverage simply because other employees had exhausted the availability of State cars on that particular day. It is my view that there is no just reason to exclude from coverage a woman who was incontestably acting within the scope of her employment and who could not make use of one of the vehicles from the State's fleet because none of those vehicles was available on that particular day. *See Roberge*, 112 F.4th at 49 n.5. In my judgment, pursuant to the *Martinelli* exception, Ms. Roberge should under those circumstances be considered a named insured.

For these reasons, I am convinced that, pursuant to the *Martinelli* exception and this Court's "general principle favoring broad coverage"[9] where UM/UIM coverage is concerned, Ms. Roberge should, in the language of the first question posed by the Court of Appeals, "be considered a named insured under her employer's auto insurance policy, *despite policy language to the contrary*."[10]

This Court has traditionally kept in mind that, when construing language, its ultimate goal is to achieve a just result. Our jurisprudence is replete with instances where the Court has not myopically focused on the black letter of the text of a document (e.g., the insurance policy in the instant case) and has instead engaged in an equitable quest to determine the animating spirit of the text at issue. *See, e.g., LaPlante v. Honda North America, Inc.*, 697 A.2d 625, 628 (R.I. 1997) ("[T]his

---

[9]     *Carrera*, 577 A.2d at 983.

[10]     *Roberge*, 112 F.4th at 60-61 (emphasis added).

Court will adopt a construction that avoids an absurd *or unjust* result.") (emphasis added); *see also Tanner v. Town Council of Town of East Greenwich*, 880 A.2d 784, 800 (R.I. 2005) (stating that, in determining the proper amount of attorneys' fees to award pursuant to a statute, one factor that the court must consider is "inherent tenets of justice and fairness"); *Wilkinson v. Harrington*, 104 R.I. 224, 230, 238, 243 A.2d 745, 749, 753 (1968) (Kelleher, J.) (declining to construe a statute of limitation narrowly and stating that "[f]or courts to adopt the approach suggested by respondents would seriously retard the attainment of justice which, after all, is the true purpose of a court's existence").

I am convinced that, in view of the facts that have been summarized in the opinion of the Court of Appeals, the *Martinelli* exception should apply to this case. Therefore, I respectfully dissent.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE

Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Cynthia A. Roberge v. Travelers Property Casualty Company of America. |
| **Case Number** | No. 2024-253-M.P.<br>(No. 24-1040) |
| **Date Opinion Filed** | May 26, 2026 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Erin Lynch Prata |
| **Source of Appeal** | Certified Question by the United States Court of Appeals for the First Circuit in accordance with Article I, Rule 6 of the Supreme Court Rules of Appellate Procedure |
| **Judicial Officer from Lower Court** | Chief Judge David J. Barron, Judges Ojetta Rogeriee Thompson and Gustavo A. Gelpi of the United States Court of Appeals for the First Circuit |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>James S. D'Ambra, Esq. |
| | For Defendant:<br><br>Jessica M. Savino, Esq. |